IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| AMANDA CHANG,<br><br>        Plaintiff,<br><br>   v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>        Defendant. | CIV. NO. 23-00434 JMS-RT<br><br>ORDER REVERSING AND REMANDING THE ALJ'S DECISION FINDING CLAIMANT NOT DISABLED |

## ORDER REVERSING AND REMANDING THE ALJ'S DECISION FINDING CLAIMANT NOT DISABLED

### I. INTRODUCTION

Amanda Chang ("Claimant") seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security, Martin O'Malley ("Defendant" or "Commissioner").[1] ECF No. 1. The Commissioner adopted Administrative Law Judge Elizabeth Stevens Bentley's ("ALJ") August 30, 2022 written decision finding Claimant not disabled prior to attaining age 22 for child's insurance benefits. Claimant argues the ALJ committed reversible legal

---

[1] Martin O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (providing that action survives regardless of any change in the person occupying the office of Commission of Social Security).

error by finding that Claimant's medically determinable impairments of postural orthostatic tachycardia syndrome ("POTS") and myalgic encephalomyelitis/ chronic fatigue syndrome ("chronic fatigue") were not severe prior to attaining age 22.  *See* ECF No. 14 at PageID.988.

The court agrees that reversal is warranted based on the ALJ's application of the wrong legal standard in finding no severe medically determinable impairments and, thus, no disability prior to Claimant attaining age 22.  The court therefore REVERSES the ALJ's written decision and REMANDS for further proceedings.

## II.  BACKGROUND

**A.  The Social Security Disability Determination Framework and the ALJ's Findings and Decision**

In August 2021, 34-year old Claimant applied for Childhood Disability Benefits, alleging disability as of August 15, 2005 (when she was 15 years old).[2]  Administrative Record ("AR")[3] 146.  She alleges that (1) POTS, (2) chronic fatigue, (3) orthostatic hypotension dysautonomic syndrome, (4) mast cell activation disorder (or mast cell disease), and (5) Ehlers Danlos syndrome limited her ability to work.  AR 170.

---

[2]  Claimant was born on November 15, 1989.  Administrative Record ("AR") 146.

[3]  The AR is numbered sequentially from pages 1 to 929 and is available at ECF No. 7.

A claimant is eligible for child's insurance benefits on the earnings record of an insured person who is entitled to old-age or disability benefits if: (1) she is the insured's child; (2) she is a dependent of the insured; (3) she is unmarried and over the age of 18; and (4) she suffered from a disability before attaining age 22. *See* § 202 of the Social Security Act, 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a). In this case, the insured person is Valerie Chang, a family member (presumably Claimant's mother). *See* AR 147.

The Commissioner has established a five-step sequential analysis to assess disability,[4] which asks:

> (1)   Has the claimant been engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> (2)   Has the claimant's alleged impairment been sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.
>
> (3)   Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> (4)   Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

---

[4] The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)).

> (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.[5]

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. § 404.1520 (explaining the five-step sequential evaluation process used to decide whether a claimant is disabled)), *see also Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (stating that the 2017 revised Social Security regulations do not alter the five-step sequential evaluation process). For steps one through four, the burden of proof is on the claimant, and if the claimant reaches step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since August 15, 2005 (the alleged onset date). AR 21. The ALJ also found that as of August 15, 2005, Claimant had not attained age 22. *Id*. (citing 20 C.F.R. §§ 404.102 and 404.350(a)(5)).

At step two, the ALJ found that prior to attaining age 22, Claimant

---

[5] The analysis for determining a child's eligibility for benefits is a truncated version of the five-step analysis encompassing only steps one to three. *See* 20 C.F.R. § 416.924; *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009) (describing the three-step process to determine a child's eligibility for benefits). Here, the five-step analysis applies because the relevant time frame begins the day Claimant attained age 18. 20 C.F.R. § 416.924(f) (providing in part "[f]or the period starting with the day you attain age 18, we will use the disability rules we use for adults who file new claims, in § 416.920.").

4

had medically determinable impairments consisting of POTS and chronic fatigue. *Id.* The ALJ then found that, prior to attaining age 22, Claimant, "did not have a severe impairment or combination of impairments . . . ." *Id*. The ALJ thus determined that Claimant had not been under a disability at any time prior to November 14, 2011, the date she attained age 22.  AR 24 (citing 20 C.F.R. §§ 404.350(a)(5) and 404.1520(c)).  The ALJ did not continue her analysis beyond step two.

**B.   Procedural Background**

Claimant's claim was denied initially on November 19, 2021, AR 54, and upon reconsideration on March 10, 2022, AR 59.  After an August 18, 2022 administrative hearing, at which Claimant, her counsel, and a vocational expert testified, AR 29–53, the ALJ issued her written decision on August 30, 2022, finding Claimant not disabled prior to attaining age 22.  AR 16–28.  This decision became final when the Appeals Council denied Claimant's request for review on August 24, 2023.  AR 3–7.  Claimant brought this action for judicial review on October 25, 2023.  ECF No. 1.

Claimant filed her Opening Brief on April 10, 2024.  ECF No. 14. Defendant filed an Answering Brief on May 10, 2024.  ECF No. 17.  Claimant filed her Reply Brief on May 16, 2024.  ECF No. 18.  The court held a hearing on

5

June 10, 2024, ECF No. 24, and at the court's request the parties filed supplemental briefing on June 20, 2024.  ECF Nos. 25 & 26.

### III.  STANDARD OF REVIEW

Congress has provided a limited scope for judicial review of the Commissioner's decision to deny benefits under the Social Security Act.  *See* 42 U.S.C. § 405(g); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") (internal quotation marks and citation omitted).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  First, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  *Id*. (quoting *Treichler*, 775 F.3d at 1098).  Second, courts will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'"  *Id*. (quoting *Treichler*, 775 F.3d at 1098).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation marks and citation omitted). And, third, even where the ALJ commits legal error, courts uphold the ALJ's decision if that error is harmless. *Brown-Hunter*, 806 F.3d at 492. An error is harmless if it is "inconsequential to the ultimate nondisability determination" or if, "despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id*. (quoting *Treichler*, 775 F.3d at 1099).

## IV.  DISCUSSION

### A.   Disability Determination at Step Two

The ALJ denied the claim at step two of the five-step sequential analysis. Step two has two parts: (1) determining whether an individual has a medically determinable impairment; and (2), if so, whether one or more of the impairments is severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521 (setting forth part one of step two), and 404.1522 (setting forth part two of step two); *see also Sy S. v. Comm'r Soc. Sec. Admin.*, 2024 WL 2292447, at *6 (D. Or. May 21, 2024) (explaining that that step two proceeds in two parts: "First, the ALJ establish[es] that [the claimant has] a medically determinable impairment(s), and then the ALJ must "determine whether [the claimant's] impairment(s) is severe.") (internal quotation marks omitted).

In part one, the ALJ must determine whether Claimant had an impairment(s) that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. An ALJ cannot rely upon a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)," rather, it "must be established by objective medical evidence from an acceptable medical source." *Id*.

In part two, the ALJ then determines whether the impairment(s) is severe. An impairment is severe if it significantly limits a claimant's "physical or mental ability to do basic work activities." *See* 20 C.F.R. § 404.1522 (stating the converse, that is, that an impairment is not severe "if it does not significantly limit your physical or mental ability to do basic work activities"). The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 20 C.F.R. § 404.1521(b) (1986)); *see also* 20 C.F.R. § 404.1522.[6]

---

[6] 20 C.F.R. § 404.1522 describes "basic work activities" as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;

(continued . . .)

8

This inquiry has several important components.  The ALJ is required to "consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Social Security Ruling ("SSR")[7] 86–8, 1986 WL 68636, at *2 (S.S.A. Jan. 1, 1986), *superseded on other grounds by* SSR 91-7c, 1991 WL 231791 (S.S.A. Aug. 1, 1991)); *see also* SSR 85–28, 1985 WL 56856, at *3 (S.S.A. 1985).  Also, she is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity.  *Id*. (citing 20 C.F.R. § 404.1529(d) (providing in part "[w]e follow a set order of steps to determine whether you are disabled.  If you are not doing substantial gainful activity, we consider your symptoms, such as pain, to evaluate whether you have a severe physical or mental impairment(s), and at each of the remaining steps in the process.")).

"Despite the meaning of the word 'severe' in common parlance, the step-two severity threshold is not high." *Toledo v. Comm'r of Soc. Sec.*, 2024 WL

---

    (5) Responding appropriately to supervision, co-workers and usual work situations; and
    (6) Dealing with changes in a routine work setting.

[7] "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation omitted); *see also Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) ("[SSRs] reflect the official interpretation of [the SSA] and are entitled to some deference as long as they are constent with the Social Security Act and regulations.").

3029251, at *3 (E.D. Cal. June 17, 2024). For example, the step-two inquiry is considered a de minimis screening device to dispose of groundless claims. *Smolen*, 80 F.3d at 1290; *see also Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 147, 153 (1987) (internal quotation marks omitted) (describing the "step-two severity analysis" as a "threshold showing" that serves to "identify[ ] at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."). That is, "claimants need only make a de minimis showing for the analysis to proceed past this step and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations." *Glanden*, 86 F.4th at 843–44.

*Glanden* cautions that "[a]n inconclusive medical record precludes denial" at step two. *Id*. at 844. "If 'the medical record paints an incomplete picture of [the claimant's] overall health during the relevant period,' there can nonetheless be 'evidence of problems sufficient to pass the de minimis threshold of step two.'" *Id*. (quoting *Webb*, 433 F.3d at 687). Furthermore, an impairment or combination of impairments can be found not severe "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb*, 433 F.3d at 686 (quoting *Smolen*, 80 F.3d at

10

1290); SSR 85-28, 1985 WL 56856, at *4 (S.S.A. Jan. 1, 1985) (explaining that "[g]reat care should be exercised in applying the not severe impairment concept"); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28 on remand from the Supreme Court).

**B.     The ALJ Failed to Conduct a Proper Step-Two Analysis**

Under the "applicable law" heading of her decision, the ALJ set forth the correct step-two standard. *See* AR 19–20 (citing 20 C.F.R. §§ 404.1520(c), 404.1522, SSRs 85-28, 16-3p).[8]  But later in her decision, the ALJ applied the wrong law to determine whether Claimant's impairments were severe.  Instead of applying correct step-two standards, the ALJ relied on the framework established to determine an individual's residual functional capacity ("RFC"), an analysis

---

[8] The decision aptly explains the step-two process as follows:

> At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522, Social Security Rulings (SSRs) 85-28 and 16-3p).

AR 20.

undertaken after the step-two inquiry.[9]  *See Lichtenberg v. Comm'r of Soc. Sec. Admin.*, 2023 WL 7409999, at *4 (D. Ariz. Nov. 9, 2023) (stating that an RFC determination is an "inquiry entirely separate from the inquiry under Step Two"); *Wilde v. Colvin*, 2014 WL 8106123, at *4 (N.D. Okla. Mar. 11, 2015) (stating that the step-two analysis and RFC determination "are separate inquiries with different purposes"); *Fisher v. Colvin*, 2016 WL 1248900, at *2 (N.D.N.Y. Mar. 29, 2016) (same).  As explained below, this error permeated the decision, and is not harmless error.

First, prior to summarizing Claimant's testimony, the ALJ stated: "The claimant's testimony is only accepted to the extent her testimony is consistent with the conclusion she can do the work described herein.  Specifically, the self-asserted limitations described in the claimant's testimony have been considered within the *residual functional capacity stated herein*."  AR 22 (emphasis added). Not only is the RFC reference misplaced in a step-two analysis, there was no RFC "stated herein."  *Id.*  The court is unable to discern how this passage impacted the

---

[9] When applied correctly, an ALJ assesses a claimant's RFC between steps three and four of the five-step evaluation process.  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citing 20 C.F.R. § 416.920(e)); *Kolish v. O'Malley*, 2024 WL 2878241, at *2 n.4 (D. Haw. June 7, 2024).  That is, an RFC is determined once an ALJ determines that a claimant has one or more severe impairements, and determines that the imparirment(s) is not a listed impairment in 20 C.F.R. part 404, Subpart B, Appendix 1.  A plaintiff's RFC is "the most you can still do despite your limitations."  20 C.F.R. § 416.945(a)(1).

12

ALJ's decision that Claimant's impairments were not severe. This language appears to be a "cut and paste" from a decision analyzing a claimant's RFC.

Next, after discussing Claimant's activities of daily living, the ALJ found that "[t]hese activities reflect a significant functional capacity and not an individual unable to *sustain regular and continuing work* due to medically determinable impairments." AR 23 (emphasis added).[10] Again, this appears to be an RFC finding related to functioning, not the severity of an impairment. *See* 20 C.F.R. § 416.945(b) (assessing, among other things, physical abilities, extent of physical limitations, and determining RFC "for work activity on a regular and continuing basis"); SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) (describing RFC as an "individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."); *Moore v. Astrue*, 2013 WL 76287, at *9 (D. Or. Jan. 4, 2013) ("The claimant's RFC, by definition, represents work-related activities that the claimant may still perform on

---

[10] As set forth above, an impairment or combination of impairments can be found not severe "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Glanden*, 86 F.4th at 844. "In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis." *Joshua S. v. Kijakazi*, 2021 WL 5036015, at *3 (D. Me. Oct. 27, 2021), *report and recommendation adopted*, 2021 WL 5702427 (D. Me. Dec. 1, 2021). Here, the ALJ's finding that Claimant's activities do not reflect "an individual unable to sustain regular and continuing work" responds to the wrong question. For the step-two analysis, the issue is whether any impairment has more than a minimal impact on the ability to sustain regular and continuing work. The ALJ never addressed that specific issue— whether Claimant's POTS and chronic fatigue had more than a minimal effect on her ability to work.

a regular and continuing basis, despite the limitations imposed by her impairments.") (citations omitted). And, again, the court is unable to discern how this passage impacted the ALJ's decision that Claimaint's impairments were not severe.

The ALJ then summarized her decision with another phrase reminiscent of RFC: "In sum, while the allegations regarding the nature of the claimant's symptoms were supported within the medical and other evidence in the file, the contentions regarding the severity and the related *functional restrictions* were not supported." AR 23 (emphasis added).[11]

This court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g) and *Batson v. Comm'r. of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)). Here, reviewing the

---

[11] Other parts of the decision are also troubling. For example, the decision states that "there are no records of medical treatment from 2007 through 2011." AR 23. Then, when discussing opinion evidence of prior administrative medical findings, the decision states that those physicians found "no evidence to support any medical diagnoses." *Id*. This was based, at least in part, by the evaluator's statement: "No evidence in file. Evidence is insufficient." AR 57; *see also* AR 62. But the decision next appears to contradict this assertion, stating that those opinions "are supported by objective medical evidence and are consistent with evidence from other sources and supported by the record as a whole." *Id*. The ALJ never explains how a lack of evidence—"No evidence in file"—could be consistent with other objective medical evidence.

ALJ's decision as a whole, the court determines that the ALJ applied the incorrect legal standard to her step-two severity analysis.

This error was not harmless. An error is harmless if it is "inconsequential to the ultimate nondisability determination" or, if there is a legal error, "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1099). Further, in making a harmless error determination, the court is "constrained to review the reasons the ALJ asserts" and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout*, 454 F.3d at 1054 (citations omitted). Here, the legal error is neither inconsequential to the ultimate finding of no severe medical impairment nor can the court "discern" the ALJ's rationale given the legal error explained above. Given that the ALJ's step-two severity analysis was premised on an incorrect legal standard, there is simply no reasoning set forth in the decision that the court can use to meaningfully review whether the error was harmless. *Cf. Treichler*, 775 F.3d at 1103 ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

This conclusion is particularly true because, as explained above, the step-two analysis is a de minimis screening device, and a denial of benefits at step

15

two "requires an unambiguous record showing only minimal limitations." *Glandon*, 86 F.4th at 843–44.  Here, at least accepting Claimant's testimony as true, she had more than minimal limitations before attaining the age of 22.

Further, the ALJ found, at part one of step two, that "[p]rior to attaining age 22, the claimant had the following medically determinable impairments: postural orthostatic tachycardia syndrome and chronic fatigue syndrome."  AR 21.  But the ALJ never explains *how* she reached that conclusion, given that these impairments were, presumably, based on "objective medical evidence."  20 C.F.R. § 404.1521.  A full discussion as to how the ALJ arrived at her decision as to the presence of these medically determinable impairments may have permitted the court to undergo a meaningful harmless error analysis.  Without such a discussion, and given the application of the wrong legal standard to determine severity, the court is unable to undertake a harmless error analysis.  *See Glandon*, 86 F.4th at 844 (stating that an "inconclusive medical record precludes denial" at step two).  As a result, the ALJ's error is not harmless.  *Brown-Hunter*, 806 F.3d at 492.

\\\

\\\

\\\

\\\

## V. <u>CONCLUSION</u>

For the foregoing reasons, the court REVERSES the ALJ's Decision and REMANDS this action to the ALJ for further proceedings consistent with this Order. The Clerk of Court is instructed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 28, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge


*Chang v. O'Malley*, Civ. No. 23-00434 JMS-RT, Order Reversing and Remanding the ALJ's Decision Finding Claimant Not Disabled